## THOMAS SHIELDS, JR., v. SAMUEL M. LOZEAR.

1. A tenant who holds a mortgage on the demised premises, the money secured by which is due on the day on which his lease expires, may continue to hold the premises under the mortgage—the mortgage money not being paid—without first surrendering the premises to his landlord, although in the lease he has covenanted to yield up and surrender possession of the premises to his landlord at the expiration of his term.

2. Tender of the mortgage money, at the day fixed by the mortgage, discharges the mortgaged premises from the lien of the mortgage, because it is equivalent to performance of the condition. Payment after the day, accepted by the mortgagee, will also discharge the mortgage, and re-vest the mortgaged premises in the mortgagor, without a re-conveyance, for the reason that, after forfeiture, the mortgage still remains only a security for the money originally secured by it, and whatever discharges the debt, extinguishes the security.

3. But an unaccepted tender of the mortgage money, made after the day prescribed in the mortgage, will not affect the lien of the mortgage on the land. It is neither performance of the condition nor payment or satisfaction of the debt. Its only effect will be to stop the running of interest, and to subject the mortgagee to the costs of a redemption by bill in equity.

4. The statute of December 3d, 1794, (*Nix. Dig.* 608,) authorizing courts of law, in certain cases, to enforce redemption by compelling the mortgagee to accept the mortgage money on its being paid into court, and to assign, surrender, or re-convey the mortgaged lands to the mortgagor, or such person as he shall appoint, should be strictly construed, and is not applicable to any case in which the mortgagor is himself the actor. The act was designed to apply only in certain cases, men-

tioned in its preamble and in the introductory words of the statute, and was not intended to supplant bills for redemption in courts of equity, where the remedy is complete, and relief may be speedy and efficacious by the use of the writ of assistance, to put the mortgagor in possession of the mortgaged premises, where the mortgagee has entered and held possession.

In ejectment. Error to the Supreme Court.

This was an action of ejectment tried before the Chief Justice at the Warren Circuit (a trial by jury having been waived by the parties,) to recover the possession of a tract of land situate in said county. The action was commenced on the 13th of June, 1869, and the plaintiff's right of possession was alleged to have accrued on the 1st day of April, 1869. The plaintiff in error (who was the plaintiff below) produced and offered in evidence a deed of conveyance of the premises, made to him by the defendant and wife, bearing date on the 9th of April, 1867.

The defendant then offered in evidence a mortgage made and executed to him by the plaintiff on the same premises, bearing date April 1st, 1867, together with the bond mentioned in and secured by said mortgage, conditioned for the payment of the sum of $4,000 on or before the 1st of April, 1868, with interest from date. The plaintiff then offered in evidence a lease for the same premises, made and executed by him to the defendant, bearing date on the 9th day of April, 1867, for a term ending on the 1st day of April, 1868, in and by which said lease the defendant covenanted to quit and surrender up the premises to the plaintiff at the expiration of the said term, and proved that the rent agreed on was the interest of the mortgage money, and taxes and water rates. It was also proved and found as a fact in the cause, that a legal tender of the money due upon the said bond and mortgage was made by the plaintiff to the defendant after the 1st day of April, 1868, and before the commencement of this action, which tender the defendant refused to accept.

The evidence being closed, the plaintiff, by his counsel, asked the court to find and to give judgment that the plaintiff was entitled to have possession of the said premises on the 1st of April, 1868, by virtue of the said lease, and that said lease required the said defendant to deliver possession of said premises to the said plaintiff, which finding and judgment the court refused to make and give, and thereupon the plaintiff prayed an exception to such refusal, and that his exception might be sealed, and it is sealed accordingly.

M. Beasley, *C. J.* [L. S.]

The said plaintiff also asked the court to find, as a fact, that a legal tender of all the money due and owing on the said bond and mortgage was made by the plaintiff to the defendant after the 1st day of April, 1868, and before the commencement of this action, and, upon that fact, to give judgment for the plaintiff, on the ground that said tender extinguished and terminated any and all right the said defendant might have previously had to hold possession of the said land, by virtue of said mortgage. And the plaintiff by his counsel, also asked the court, in case the plaintiff should be in error as to his asking in regard to the effect of the said lease, to permit an amendment of the declaration to be made, so as to state that the plaintiff's right to the possesssion accrued at the time when the said tender was made.

The court did find, as a fact, that a legal tender of all the money due upon the said bond and mortgage was made by the plaintiff to the defendant after the 1st day of April, 1868, and before the commencement of this action; but the court refused to adjudge that said tender extinguished and terminated the right of the said defendant to hold possession of the said land, by virtue of said mortgage, and did adjudge that said tender having been made after the day named in the said bond for the payment thereof, did not extinguish or terminate the right of the said defendant to hold possession of the said land, and that the said defendant

was and is entitled to hold possession of said land, by virtue of said mortgage, notwithstanding the making of said tender, to which refusal and judgment of the court the plaintiff, by his counsel, excepted, and he prayed that his exception might be sealed, and it is sealed accordingly.

M. BEASLEY, *C. J.* [L. S.]

For plaintiff in error, *Jacob Vanatta.*

For defendant in error, *J. G. Shipman.*

The opinion of the court was delivered by

DEPUE, J. The bills of exception sealed at the trial raise two questions: First. Whether the defendant, being the tenant of premises under the plaintiff, could, at the expiration of his lease, make title under his mortgage without first yielding and surrendering the possession to the plaintiff. And, Second. Whether a tender by the mortgagor of the money secured by a mortgage, which is not accepted by the mortgagee, made after the day of payment named in the condition, terminates the estate of the mortgagee in the mortgaged premises, and extinguishes the lien of the mortgage on the land.

The general rule is, that a person who is in possession of premises will not be permitted to dispute the title of the landlord under whom he entered.

The facts of this case do not bring it within the principle of this rule. The deed of conveyance made by the defendant to the plaintiff, the mortgage from the latter to the former, and the lease between the parties are all parts of the same transaction.

By the lease, the defendant became entitled to the possession of the premises until the 1st day of April, 1868, when the mortgage money became due, and the defendant became entitled to enter and hold under his mortgage. The title of the defendant under the mortgage, as well as that under his

lease, is not hostile to the plaintiff, but is in recognition of, and in subordination to the title of the plaintiff, under which the defendant was originally admitted into possession. But the argument of the plaintiff's counsel is, that although the defendant's title under his mortgage was derived from the plaintiff, yet that the obligation of the defendant springing from the relation of the tenancy, was first to surrender and yield up to his landlord the possession of the premises, in obedience to his covenant to surrender at the expiration of the term, before he was to be permitted to assert any possession under the mortgage. The law does not carry the fealty of the tenant to his landlord to such extent. The well-settled exceptions to the general rule aptly illustrate the non-existence of any obligation of this character.

The tenant may show that the title of the landlord has expired by the efflux of time. *England* v. *Slade*, 4 *J. R.* 682 ; 2 *Saund.* 418, *note c ; Jackson* v. *Rowland*, 6 *Wend.* 666 ; or that pending the term he has sold his interest. *Doe* v. *Watson*, 2 *Star.* 230 ; *Doe* v. *Edwards*, 6 *C. & P.* 208 ; or that it has been changed by act of law, as by a sheriff's sale. *Doe* v. *Ashmore*, 2 *Zab.* 261 ; or that he has mortgaged it to a third person. *Pope* v. *Biggs*, 9 *B. & C.* 245 ; *Watson* v. *Lane*, 11 *Exch.* 769.

The covenant to deliver possession at the expiration of the term will not estop the tenant from showing that the title of the lessor has expired. *Doe* v. *Seaton*, 2 *Cr., M. & R.* 728.

These changes in the circumstances of the landlord with respect to his title, occurring during the continuance of the tenancy, are permitted to affect his relations with his tenant, and to modify and defeat his rights as landlord, if the tenant places himself under the protection of the disturbing element, by attorning to the subsequently accruing title. This attornment the tenant may lawfully make to any mortgagee after the right of the latter to possession has accrued under the mortgage, the right of attornment to any mortgagee after the mortgage has become forfeited, being excepted

from the statute forbidding attornments to strangers.  *Nix. Dig.* 294, § 14; *Stat.* 11 *George II., ch.* 19, § 11.

If the position contended for be conceded, this result will follow: that if a tenant during the continuance of his lease obtain a new lease for the premises for an additional term commencing at the expiration of the term of his existing lease, he cannot enter and hold under his new lease, or defend an action of ejectment brought against him by his landlord, unless he first surrender the possession to his landlord, and is by him re-admitted into the possession.  Under such circumstances there is no cessation or interruption of the tenant's right of possession; and the effect of the two leases will be to enlarge his term until the expiration of the new lease.

By the common law, a mortgage in fee created an immediate estate in fee simple in the mortgagee, subject to be defeated by the payment of the mortgage money on the day named in the condition, and the mortgagee might enter immediately on the mortgaged premises, and hold the estate until the condition was performed.  In this state, it was held by this court that the right to enter was postponed, and the possession was in the mortgagor, until the condition was broken by default in the payment of the mortgage money. *Sanderson* v. *Den, ex dem. Price,* 1 *Zab.* 646, *note.*   With this modification of the rights of the mortgagee, as to the postponement of ability to obtain the possession of the mortgaged premises, the nature of the mortgage as a conveyance remains as it was at common law.   By the concurrent execution and delivery of the lease and the mortgage, a lease-hold interest, to continue until the 1st day of April, 1868, and a freehold estate, to take effect in possession on the day of the expiration of the lease in default of the payment of the mortgage money, were created in the defendant.

Having been admitted into possession under the lease, a formal entry under the mortgage was not necessary to vest in him the possession under it.

The extinguishment of the lien of the mortgage, by the

unaccepted tender of the mortgage money after the day named
in the condition, was contended for by the plaintiff's counsel
with much earnestness.

A mortgage, at common law, is a conveyance absolute in
its form, granting an estate defeasible by the performance of
a condition subsequent.  The estate thus created was strictly
an estate on condition, and in a court of law was treated as
subject to be defeated only by the performance of the condi-
tion in the manner and at the time stipulated for in the de-
feasance.  If made on condition that the conveyance should
be void on payment of a definite sum of money on a given
day, and the condition was performed according to its terms,
the estate reverted back to the mortgagor without any re-
conveyance by the simple operation of the condition.  A
tender at the time and place and in the manner prescribed
in the instrument itself, was equivalent to performance, and
operated to determine the estate of the mortgagee, and re-
vest it in the mortgagor.  *Lit.*, § 335 ; *Co. Lit.* 207, *a ;* 4
*Kent* 193 ; *Coote on Mortgages* 6 ; *Merritt* v. *Lambert*, 7 *Paige*
344.  But when the condition was discharged by failure to
comply with its terms, the estate of the mortgagee became
absolute in law, and the title of the mortgagor was com-
pletely divested and gone, and a re-conveyance was neces-
sary to restore him to his original estate.  *Lit.*, § 332 ; 2
*Black. Com.* 158 ; *Coote on Mortgages* 9.  So inflexibly was
this harsh rule of the law adhered to, that it was remarked
by a learned writer, that if the debtor had no greater mercy
shown to him than a court of law will allow, the smallest
want of punctuality in his payment would cause him forever
to lose the estate he had pledged.  *Williams on Real Prop.*
333.  The rigor of this rule was somewhat abated by the
statute of 7 *George II.*, *ch.* 20, (1 *Evans' Statutes* 243, re-
enacted in this state December 3d, 1794, *Nix. Dig.*, 4*th ed.*,
608,*) which permitted a mortgagor, when an action was
brought on the bond or ejectment on the mortgage, pending
the suit, to pay to the mortgagee the mortgage money, inter-
est, and all costs expended in any suit at law or in equity ;

*Rev., p. 701.

or, in case of a refusal to accept the same, to bring such money into court where such action was pending, which moneys so paid or brought into court were declared to be a satisfaction and discharge of such mortgage ; and the court was required, by rule of court, to compel the mortgagee to assign, surrender, or re-convey the mortgaged premises unto the mortgagor, or to such other person as he should for that purpose nominate and appoint. In cases strictly within the terms of this statute, the English courts of law have exercised an equitable jurisdiction, to enforce a redemption on payment of the mortgage debt after default in payment, according to the condition, by compelling a re-conveyance. Except in cases within this statute, the doctrine of the English courts is in accordance with the ancient common law, that at law, a failure to pay at the day prescribed forfeits the estate of the mortgagor under the condition, leaving him only an equity of redemption, which chancery will lay hold of and give effect to, by compelling a re-conveyance on equitable terms.

In the United States, the prevailing doctrine in courts of law, as well as in courts of equity, is to consider the mortgage as merely ancillary to the debt, and to hold that the estate of the mortgage is annihilated by the extinguishment of the debt secured by it, after the day of payment named in the condition. 2 *Greenl. Cruise* 91, *note* 1 ; 4 *Kent* 193. In fact, the latter conclusion will necessarily follow, whenever the mortgage is regarded not as a common law conveyance on condition, but as a security for the debt, the legal estate being considered as subsisting only for that purpose. In this state this is the generally received aspect in which a mortgage is regarded, as a mere security for the debt. Per CHIEF JUSTICE GREEN, in *Osborne* v. *Tunis*, 1 *Dutcher* 651 ; per JUSTICE SOUTHARD, in *Montgomery* v. *Bruere*, 1 *South.* 279, whose dissenting opinion in the Supreme Court was adopted in the Court of Errors in reversing the judgment of the Supreme Court. 2 *South.* 865. Consequently, payment after the day will convert the mortgagee into a trustee of

the legal estate, for the benefit of the mortgagor.    In *Harrison* v. *Eldridge*, 2 *Halst.* 407, Chief Justice Kinsey, speaking of payment after the law-day, says: "When the debt is discharged according to law, the mortgagee has the legal seizin in trust for the mortgagor, and the court will never permit the trustee or those claiming under him to set up this legal estate in him or them, to defeat the possession of the *cestui que trust*.    This principle is settled in *Armstrong* v. *Peirse*, 3 *Burr.* 1898.    The same doctrine being applicable to all trustees, the court would not permit a recovery upon a merely formal title, when the *cestui que trust* could have compelled a re-conveyance immediately, and thus have acquired the legal title."    The seventh section of the act of June 7th, 1799, (*Rev. Laws* 463; *Nix. Dig.*, 4th ed., 611, § 11,*) which authorizes satisfaction to be entered on the registry of the mortgage, in discharge of the mortgage, gives a legislative sanction to this effect of payment in the case of a mortgage which has been recorded.

But a tender, though it is equivalent to performance, where the question is whether the party is in default, is not a satisfaction or extinguishment of a debt.    Tender of the mortgage debt on the day named is performance of the condition, and, by force of the terms of the condition, determines the estate of the mortgagee, and the condition being complied with, the land reverts to the mortgagor by the simple operation of the condition.    The courts of the state of New York have given the same effect to a tender, without payment, after the day prescribed for payment.    This doctrine was first asserted in *Jackson* v. *Crafts*, 18 *J. R.* 110, on a misapprehension of a passage from Littleton.    *Lit.*, §§ 335, 338. It was denied by the Chancellor in *Merritt* v. *Lambert*, 7 *Paige* 334, and re-affirmed in the Supreme Court in *Edwards* v. *The Farmers' Fire Insurance and Loan Company*, 21 *Wend.* 467; and in the Court of Errors, in the same case on error, 26 *Wend.* 541 ; and by the Supreme Court in *Arnot* v. *Post*, 6 *Hill* 65; and again denied by the Court of Errors in reversing the last-mentioned case.    *Post* v. *Arnot*,

*Rev., p. 707, § 23.

2 *Denio* 344. Finally, in *Kortright* v. *Cady*, 21 *N. Y.* 343, the question was set at rest in the courts of that state by re-affirming the rule laid down in *Jackson* v. *Crafts*, and it seems now to be the settled law in that state that a tender of the money due upon a mortgage at any time before foreclosure, discharges the lien without payment, though made after the law-day. I do not find that the rule, as finally established in the courts of New York, has been adopted by the courts of any other state. In Massachusetts the decisions have been to the contrary. *Maynard* v. *Hunt*, 5 *Pick.* 240; *Currier* v. *Gale*, 9 *Allen* 522. In an early case in New Hampshire, (*Swett* v. *Horn*, 1 *New Hamp.* 332,) the court held, under a statute declaring that all real estate pledged by mortgage might be redeemed by paying all costs, &c., provided such payment or performance or tender thereof be made within one year after the entry of the mortgagee for condition broken, that tender more than a year after breach of condition, where no entry had been made by the mortgagee, discharged the lands. In a subsequent case, the same court qualified the ruling of this case by denying this effect of the tender unless the money was brought into court. *Bailey* v. *Metcalf*, 6 *New Hamp.* 156. It may with safety be said that the doctrine of the New York courts, originating in error, and maintained against the opinion of some of the most eminent jurists that have occupied the bench of that state, is without the support of any judicial tribunal in this country; and it is impossible to perceive upon what principle of law or equity it can be rested. As already observed, tender on the day named determinates the estate of the mortgagee, because it is performance of the condition. Regarding the mortgage as remaining after default, only as a security for the debt, payment thereafter, by a necessary sequence, operates as extinguishment; the debt being the principal and the security the accessory. Whatever discharges the debt extinguishes the security. No reason, founded in principle, can be assigned for giving that effect to a tender after forfeiture. The appropriate office of a tender

is to relieve the debtor from subsequently accruing interest, and the costs of enforcing, by a suit, the obligation which by the tender of payment he was willing to perform. The debt still remains. In the case of a common money-bond, before the statute 4 *Anne, ch.* 16, § 12, re-enacted in this state, (*Nix. Dig.* 631, § 9,*) payment after the day would not be pleaded without an acquittance by deed. 2 *Saund.* 48, *c,* note 1; *Rosencrantz* v. *Durling,* 5 *Dutcher* 191. The statute only applies to payments actually made, and a tender after the day cannot be pleaded. 2 *Saund.* 48, *b, note i.* And if the tender is made on the day, it can only be made available by plea, accompanied by payment into court. *Co. Lit.* 207, *a.*

Where, as in this case, the mortgage is accompanied by a bond, to hold that a tender, after default, extinguished the mortgage, for the reason that after such default it remains only a security for the debt, will lead to the incongruity of giving to the tender an effect with respect to the security, which by the rules of pleading and established principles of law, the court must deny, in an action on the bond, which is the immediate evidence of the debt. If the form of the instrument which evidences the debt is overlooked, and the question is viewed in the aspect in which the indebtedness immediately arose, the tender does not pay or discharge the debt; and though it will avail to arrest the accruing of interest and to free the debtor from costs, it will be deprived of that efficacy by a subsequent demand and refusal. If legal analogy is to be pursued, it could lead no further than to deprive the mortgage of operation beyond the amount due when the tender was made, leaving the question of subsequently accruing interest and costs to be varied by the subsequent demand and refusal.

The instances in which a tender and refusal amount to payment, and will operate as an extinguishment, are those in which the obligation is in the nature of a gratuity, without any precedent debt or duty, and the discharge is an accidental and not a necessary consequence of the tender and refusal, there being no debt or duty remaining whereon

---

*Rev., p.* 742, § 6.

to ground an action. 6 *Bac. Abr.* 456, *title Tender, &c.,* *F.* If there is a precedent debt, as a loan of money, which the debtor secures by a mortgage on his land, conditioned for payment, though by a tender made on the day the land is freed, and the feoffor may enter according to the condition, the debt is not thereby discharged, and may be recovered by action of debt. *Co. Lit.* 209, *a.* The effect of a tender on the day in terminating the estate of the mortgagee cannot be denied, because it is a legal incident of his estate. Another legal incident of that estate is the extinguishment and discharge of the condition by a failure to comply with its terms. Upon this, courts of equity raised an equitable estate in the mortgagor, called an equity of redemption, which consisted in his right to have the estate of the mortgagee continued as a security for the debt, notwithstanding the default. In equity, a tender will stop the accruing of interest, and will, in some cases, cast upon the mortgagee the costs of a suit for redemption. But until the mortgagee is actually paid off by his own consent, or by the decree of the court, he retains the character of the mortgagee, with all the rights incident to it. *Grugeon* v. *Gerrard,* 4 *Younge & Coll.* (*Exch.*) 119–128.

When a court of law undertakes to deal with this equitable estate, it must do so upon principles of equity, and keep in view the relief which would be afforded in equity, and protect the rights of the parties accordingly. The recognition of this equitable estate has been obtained in courts of law by the fiction of regarding the mortgagee, after his debt is satisfied, as a trustee of the legal estate for the mortgagor. Until the debt is paid, the legal seizin of the mortgagee is not a mere formal title, and no trust will be raised for the benefit of the mortgagor until the purpose for which the mortgage was made is answered.

It was stated on the argument that the money due on the mortgage was brought into court at the trial. That fact does not appear in the bills of exceptions. It is not necessary, therefore, to decide whether a court of law could enforce redemption in cases within the equity, though not

within the strict letter of the statute. The English courts of law have given a strict construction to the corresponding statute of 7 *George II.*, *ch.* 20, and have held the circumstances of the litigation mentioned in the preamble and in the statute to be jurisdictional facts, which the court is not at liberty to disregard. *Doe* v. *Clifton*, 4 *Ad. & El.* 809; *Good-title* v. *No-title*, 11 *Moore* 491; *Sutton* v. *Rawlings*, 3 *Exch.* 407. The statute should be strictly construed, and is not applicable to any case in which the mortgagor is himself the actor. It was designed to apply only in certain cases mentioned in its preamble and in the introductory words of the statute, and was not intended to supplant bills for redemption. The subject is one that falls peculiarly within the jurisdiction of courts of equity. The remedy there is complete by bill for a redemption, and relief may be speedily obtained by the exercise of the undoubted power of the court, by the writ of assistance to carry into effect its decree, by putting the mortgagor in possession, where the mortgagee has obtained possession under the mortgage. *Yates* v. *Humbly*, 2 *Atk.* 363; *Green* v. *Green*, 2 *Simons* 399, 406; *Bacon's Ordinances in Chancery* 9; *Valentine* v. *Teller*, *Hopk. C. R.* 422; *Devancene* v. *Devancene*, 1 *Edw. C. R.* 272; *Kershaw* v. *Thompson*, 4 *Johns. C. R.* 609; *Schenck* v. *Conover*, 2 *Beas.* 221; *Fackler* v. *Worth*, *Ib.* 395; *Thomas* v. *De Baum*, 1 *McCarter* 37; 2 *Dan. Chan. Prac.* 1280.

It is not, therefore, essential to the administration of justice that courts of law should, in the absence of the imperative requirements of a statute, entertain a jurisdiction that pertains to courts of equity, in the exercise of which, equities may arise that a court of law may be incompetent to deal with.

There is no error in the rulings of the court below, and the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, BEDLE, DALRIMPLE, DEPUE, SCUDDER, VAN SYCKEL, CLEMENT, KENNEDY, OGDEN, VAIL. 10.

*For reversal*—None.

CITED *in Kloepping* ads. *Stellmacker*, 7 *Vr.* 181; *Kircher* v. *Schalk*, 10 *Vr.* 337.