91 N.J. Super. 126 (1966)
219 A.2d 343
KIRKEBY CORPORATION, A CORPORATION OF DELAWARE, PLAINTIFF,
v.
CROSS BRIDGE TOWERS, INC., A CORPORATION OF NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 21, 1966.
*128 Mr. Samuel M. Koenigsberg for plaintiff (Messrs. Stavis, Richardson, Koenigsberg & Rossmoore, attorneys).
Mr. George B. Gelman for defendant tenants (Messrs. Calissi, Gelman & Cuccio, attorneys).
MATTHEWS, J.S.C.
This action was instituted by plaintiff Kirkeby Corporation (Kirkeby) against defendant Cross Bridge Towers, Inc. (Cross Bridge), seeking to foreclose a mortgage held by plaintiff on a certain leasehold held by defendant Cross Bridge. Subsequent to the institution of the action, the complaint was amended to assert claims against the tenant defendants for rents not paid to plaintiff during the period in which it had held the premises in question as mortgagee in possession.
Cross Bridge was the net lessee of a high-rise apartment building located in Fort Lee, Bergen County. It, in turn, subleased apartments in the building to various tenants. During the month of May 1963 Cross Bridge mortgaged its interest in the ground lease to plaintiff Kirkeby as security for a loan of $454,000 made by plaintiff to Cross Bridge. The mortgage was recorded in the office of the Bergen County Clerk on June 7, 1963.
Among the provisions of the mortgage there was an agreement by Cross Bridge that it would not receive or collect rents from its subtenants for more than one month in advance.[1] The mortgage also provided that as further security *129 for the mortgage debt, Cross Bridge assigned to Kirkeby all rents received by it, with the right in Kirkeby to collect such rents and to apply them, after charges and expenses, on account of the mortgage debt. Kirkeby waived its right to collect the rents until default.[2]
During July 1964 Cross Bridge came into default under the terms of the mortgage. Thereupon Kirkeby instituted the instant action for foreclosure on August 14, 1964. On August 21, 1964, Kirkeby was appointed mortgagee in possession by this court. Upon obtaining possession, Kirkeby learned for the first time that, notwithstanding the provisions of the mortgage assigning the rents to it and prohibiting the collection of more than one month's rent in advance, a substantial number of tenants had in fact prepaid their rent for varying periods to Cross Bridge. Upon subsequent demand being made by Kirkeby, as mortgagee in possession, upon the tenants for payment of rents, those tenants who had prepaid refused to comply with the demand. It is upon the happening of these latter events that plaintiff amended its complaint to assert the rent claims against the defendant tenants.
The matter is presently before me on cross-motions for summary judgment brought on behalf of plaintiff and the defendant tenants.
Extensive discovery proceedings were conducted by the parties prior to the noticing of the cross-motions here under consideration. It will serve little purpose to analyze the extensive testimony adduced concerning the events and circumstances *130 which led to and surrounded the prepayment arrangements entered into between the tenants and Cross Bridge. A brief description of a typical transaction, as gleaned from the depositions (and concerning which there is no dispute), will suffice for the purposes of this opinion.
The bulk of the prepayment situations may be described as "6 for 5" and similar arrangements. Most of them arose in the following manner: During July 1964, shortly before Kirkeby was informed by the fee owner of the July defaults of Cross Bridge, the president of the latter company, either initially or following overtures made by other individuals, approached a number of tenants, stating that he desired to make various improvements in the building. He told them that this would require mortgage financing or refinancing, which would entail the payment of interest. The president stated that he would rather raise the money from the tenants and give them the benefit of his financing costs. The plan was that the tenant would receive six months' occupancy for each five months' rent paid in advance. The arrangement was also available in multiples as 12 for 10, and 18 for 15.
A number of tenants accepted the proposition. Some of them did so after consultation with personal counsel, who in a few cases even went so far as to draw a document which was to be signed for the tenant's protection. The 6 for 5 arrangements specified the six months' occupancy as August 1964 to and including January 1965. The free month of the six was, as a rule, not specified.
Each lease executed by a subtenant of defendant Cross Bridge contained the following provision:
"17. This lease and all rights of the Tenant hereunder are hereby made subject and subordinate to any and all mortgage[3] or mortgages now of record or which may be hereafter placed against the premises and any and all clauses in said mortgage[3] or mortgage contained."
Considering the facts set forth above, the question to be determined is whether an assignment of rents by a mortgagor *131 to the mortgagee as additional security can be defeated upon default by prepayment of the rents to the mortgagor.
Under the common law view, a mortgage in fee created an immediate estate in fee simple in the mortgagee, and invested in him immediately upon execution and delivery of the mortgage an actual estate with a right of immediate possession, subject to be defeated by the payment of the mortgage money on the day fixed by the terms of the mortgage. The common law rule was modified by the courts of this State, with the result that the right to enter was postponed, and the possession was in the mortgagor, until the condition was broken by default in the payment of the mortgage money. Sanderson v. Price, 21 N.J.L. 637 (E. & A. 1846); Shields v. Lozear, 34 N.J.L. 496 (E. & A. 1869). Upon breach of condition the mortgagee's estate, under our law, has all of the incidents of a common law title, and the mortgagee has the right to the possession of the mortgaged premises. Woodside v. Adams, 40 N.J.L. 417, 422 (Sup. Ct. 1878). The mortgagee, after breach of condition, thus having a title in the premises with all of the incidents of a common law title, and only subject to be divested by a proceeding in equity to redeem, and having the right to possess the property, has the right, from the date of taking such possession, to the profits arising from the estate. Stewart v. Fairchild-Baldwin Co., 91 N.J. Eq. 86 (E. & A. 1919). The right of the mortgagee to take the rents or profits arising from the mortgaged lands cannot arise until the mortgagee has obtained possession of the lands. It is only when the mortgagee acts upon default and takes possession of the mortgaged premises that he puts to an end the rights of the mortgagor to the incidents which arise out of possession. Stewart v. Fairchild-Baldwin Co., supra.
It is plaintiff's position that its right to receive the rents due from the subtenants to the mortgagor became fixed under the afore-mentioned principles of law on September 1, 1964, the first rental payment date occurring after the date of the order of this court making it a mortgagee in possession. It *132 contends that the subordination clause of the individual leases, together with the no prepayment and assignment clauses of the recorded mortgage, vitiates any agreements entered into between the mortgagor and the subtenants with respect to the rents thereafter to grow due.
The defendant tenants, on the other hand, argue that it would be unrealistic, if not unjust, to place the onus of inquiry upon the individual tenants with respect to the provisions of the mortgage between plaintiff and Cross Bridge. They argue that plaintiff, which is a large, nationally known, financing company, was in a far better position, considering the provisions of its mortgage, to warn each of the tenants of the assignment of rents and the prohibition against prepayment as contained therein. In support of this position the tenants rely upon Kenney v. 149 North Ave. Corp., 115 N.J. Eq. 314 (E. & A. 1934); Fidelity Union Trust Co. v. 75 Prospect, &c., Apt., 131 N.J. Eq. 387 (Ch. 1942), and Martinique Realty Corp. v. Hull, 64 N.J. Super. 599 (App. Div. 1960).
In Kenney the grantee of the mortgagor entered into a binding agreement with the mortgagor's lessee to reduce the monthly rental of the mortgaged premises for the remainder of the lease, and accepted two months' reduced rent in advance at a time when the mortgage was in default. After the institution of foreclosure proceedings the court held, in the absence of the proof of fraud, that the mortgagee was not entitled to the rent paid in advance and was bound by the rent reduction legally and honestly made. While this case involved a rent receiver and not a mortgagee in possession, I do not believe that that factor alone renders it inapplicable to the question here before me. The significant difference between Kenney and the situation presently before the court is that the lease of the tenant in Kenney did not contain a specific subordination to the mortgage, nor was there an assignment of the rents in the mortgage by the mortgagor to the mortgagee. Under those circumstances the modifying arrangement entered into between the mortgagor and the *133 tenant came about prior to the time that the receiver took possession and while the mortgagor was reasonably free to deal with his tenant without the sanction of the mortgagee or one holding possession for him. The estate of the mortgagor, up to the time it is divested by possession of the mortgagee, is compatible with the estate in the mortgagee. Woodside v. Adams, supra, 40 N.J.L., at p. 423.
In Fidelity Union Trust Co. v. 75 Prospect, &c., Apt., supra, it was held that a receiver, appointed in foreclosure, is confined to the collection of rents due the owner of the mortgaged estate, and that such receiver could not dispossess tenants in disregard of their leases. This decision seems to rest upon the limitation of the powers of a receiver in a foreclosure proceeding. Its reasoning is not persuasive, but in any event, there is nothing in the decision to indicate that the lease in question had been subordinated to the mortgage or that there had been an assignment of rents from the mortgagor to the mortgagee.
Martinique Realty Corp. involved the sale and purchase of a leasehold interest in an apartment building. There the purchaser failed to inquire of tenants in an apartment unit who had prepaid rent due under a five-year lease, though such prepayment was not shown in the written instrument. The Appellate Division held that the purchaser was chargeable with notice as to the rights of the tenants by virtue of his failure to inquire of the tenants and his reliance upon the written lease alone. In the course of its opinion the court distinguished the decision in Boteler v. Leber, 112 N.J. Eq. 441 (Ch. 1933), with the facts then before it, pointing out that in Boteler the lease there involved was expressly subordinated to the mortgage, thereby insulating the mortgagee's rights to the rents upon default. 64 N.J. Super., at p. 607.
It is my opinion that the expressed subordination of each lease to mortgages of record, or to become of record, places the matter before me outside the scope of the decisions cited by defendant tenants. While it is true that under ordinary circumstances, in the absence of fraud or collusion, a *134 landlord-mortgagor and his tenant are free to modify or augment the leasehold agreement between them to the end that the mortgagee may become bound thereby, see Kenney v. 149 North Ave. Corp., supra, it must also be accepted as equally true that where the mortgagor and mortgagee have agreed under the terms of the mortgage that rents due from tenants will not be collected in advance, and the lease of the tenant contains a provision subordinating that instrument to the mortgage, the tenant, upon recordation of the mortgage, has notice of the covenant of his landlord and can deal thereafter with the landlord with respect to prepayment only at his own peril.
Under the circumstances presented here, each tenant expressly agreed, under the terms of his lease, to subordinate his rights to the rights of the mortgagee. The mortgage which was of record contained a prohibition against the landlord's accepting rents in excess of one month in advance. It was, therefore, notice to the tenants. R.S. 46:21-1. Consequently, any arrangement made in the face of these agreements which involved the prepayment of rents which were to grow due after the taking of possession by the mortgagee up to the date of the sale of the premises, cannot be held to be binding upon the mortgagee.
It follows, therefore, that any prepayment or concession agreements entered into after the date of the recording of plaintiff's mortgage are not binding on plaintiff. Any agreements that were entered into before such recordation must be regarded as binding upon it. Kenney v. 149 North Ave. Corp., supra. In the event there is any dispute as to the date of any particular prepayment agreement between defendants and the landlord, I will fix a date, upon application by counsel, for the hearing of testimony concerning the same.
An order consistent with the determination made herein may be submitted on notice or by consent. No costs to any party.
NOTES
[1] "Mortgagor agrees that it will not, without the written consent of Mortgagee, receive or collect rents from any subtenant, undersubtenant or other occupant of the Mortgaged Property for a period of more than one month in advance."
[2] "Mortgagor hereby assigns to Mortgagee the rents, issues and profits of the Mortgaged Property as further security for the payment of the indebtedness secured hereby, and the Mortgagor grants to Mortgagee the right to enter upon the Mortgaged Property for the purpose of collecting the same and to let the Mortgaged Property, or any part thereof, and to apply the rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness. This assignment shall continue in effect until the indebtedness secured hereby is satisfied and discharged. The Mortgagee hereby waives the rights granted hereunder and Mortgagor shall be entitled to collect and receive such rents, issues and profits, until default hereunder."
[3] Probably should read lease.