Voorhees *v.* Voorhees' Executor.

## VOORHEES *vs.* VOORHEES' EXECUTOR.*

1. Where the cause is heard upon bill, answer, and replication, all the allegations of the answer responsive to the complainant's bill, must be taken as true; all other allegations set up in the answer by way of defence or avoidance, not amounting to a denial of the statements of the bill, denied by the replication, and not proved by the party setting them up, can have no effect on the decision.

2. Where a legacy is left to A. for life, with remainder over to his children, a debt due from A. to the testator cannot be set off against the principal of the trust fund. The whole must be invested for the benefit of the tenants in remainder.

3. Where an executor holds the notes of his testator's legatee, although they cannot be offset against the interest due such legatee, yet a court of equity would allow them to be used in payment of the interest during his life.

4. An account settled in the Orphans Court, and within the jurisdiction of that court, cannot be inquired into in a collateral suit in this court.

*Mr. Dutcher,* for complainants.

*Mr. R. Allen, jun.,* for defendants.

THE CHANCELLOR.

William Voorhees, deceased, by his last will, dated August 22d, 1854, gave to his wife, for life, the use of a house and furniture, and the interest of one thousand dollars. He gave a house and lot to his daughter Rachel and her children. Of the residue of his property, including the property left to his wife for her life, he gave one equal tenth part to each of his ten other children, adding this clause: "The legacies of my sons Gilbert, Joseph, John, Josiah, and William, I entail; they to receive the interest during their lives, and after their decease, to their children. I further order my executors to pay the legacies that I left in fee simple to my children, to be paid in one year after my decease. The legacies I entailed to my five sons, I order my executors to put these legacies at interest, on bond and mortgage on real estate, and they to receive the interest during their lives, from my executors."

* CITED *in Brokaw* v. *Hudson's Ex'rs,* 12 *C. E. Gr.* 136; *Search's Adm'r* v. *Search's Adm'rs, Id.* 140.

And he further ordered in these words: "That of my sons Gilbert, Joseph, John, Josiah, and William, which legacies I entailed to their children, if either of them should become disabled and needy, and the interest of their share not sufficient to support them, then I order my executors to pay them so much of the principal as they, in their judgment, may think they stand in need of." He appointed his son Abraham, and his son-in-law, the defendant James Grover, executors of this will.

The testator died on the first day of January, 1856. And on the 26th day of the same month, both executors proved the will before the surrogate of Middlesex, and letters testamentary were issued to them. The executor, Abraham Voorhees, died shortly afterwards. The surviving executor, the defendant James Grover, rendered his account of the estate to the surrogate of Middlesex, by whom the same was audited and reported to the Orphans Court of that county, and that account was finally settled and allowed by that court at the term of September, 1857. By this account the balance of the estate in the hands of the executor, "for distribution as per will," is stated and determined to be eighteen thousand six hundred and twenty-five dollars and eighty-four cents.

At the settlement of said account, the widow of the testator was still living. She died in September, 1861, and the house and lot devised to her, which was expressly directed to be sold after her death, had not been sold; and of course the proceeds were not included in the account.

The bill is filed by Gilbert Voorhees, one of the testator's sons, in conjunction with Gabriel A. Voorhees and Marshall Voorhees, the two sons of Gilbert, who are his only children. They claim that Gilbert was entitled to have one tenth of the balance of the estate, being eighteen hundred and sixty-two dollars and fifty cents, invested for his benefit during his life, and the interest paid to him. They state that the defendant has paid him seventeen dollars and thirty cents, and no more, on account of interest. They admit that the defendant, on the 15th day of April, 1858, paid to Gilbert Voorhees, by

consent of his two sons, the other complainants, the sum of four hundred dollars and twenty-five cents of the principal; and insist that Gilbert Voorhees is entitled to receive from the defendant the interest on eighteen hundred and sixty-two dollars and fifty cents, from the death of the testator, to the said 15th day of April, and on the balance of fourteen hundred and twenty-two dollars and twenty-five cents from that day until now, crediting the sum of seventeen dollars and thirty cents so paid on it.

The bill prays that defendant may set forth an account of the money remaining in his hands for distribution on the settlement of his accounts, and the amount that came to his hands for the use of Gilbert Voorhees, that he may state how said money is invested, that he may be decreed to pay said Gilbert the balance of interest due to him, and such of the principal as he may need for his support, and that he may be ordered to keep the residue of the principal of Gilbert's share securely invested as directed by the will.

The answer admits and sets out the will; admits the probate and death of the co-executor, and the accounting before the Orphans Court, and the balance found due on the settlement and allowance of said account; but it claims that such account was not a final account. It sets out the inventory and the account allowed by the Orphans Court, and alleges that in said account were included three notes, given by Gilbert Voorhees to the testator, amounting, with the interest due on them, to the sum of eleven hundred and fifty dollars, or thereabouts, which notes were due and unpaid at the testator's death, and were never collected by the executor, but were included in his account, on the belief that they could be set off against Gilbert's share of the residue, or could be used in payment of the same; and insists that they can be so set off or used. It also claims that the sum of one thousand dollars invested for the widow, and the loss on the sale of the furniture bequeathed to her use, which was sold at her death, should be deducted from the balance in the account, and that the balance should be corrected, by deducting some items omitted in the account by mistake or accident. At least this

is the view I take of the positions of the answer; it may be erroneous. The answer is not drawn with distinctness or precision, and is so burthened with matters that are not responsive to the bill, and do not seem relevant to any defence to be set up to the suit, that it is very difficult to state with accuracy and certainty the precise ground taken by the defendant.

To the answer of the defendant a replication was filed. No proofs were taken on either side. The cause was set down for hearing, and the hearing had on his answer and replication only. By the settled rules of pleading in such case, all the allegations in the answer responsive to the complainant's bill, must be taken as true. All other allegations set up in the answer by way of defence or avoidance, being denied by the replication, and not being proved by the party setting them up, can have no effect on the decision of the cause, except where they amount to a denial of the statements of the bill.

The first and most important question in the cause, arises upon the position taken by the answer, that the defendant is entitled to deduct from the amount of the share of the residue coming to the complainant, the sum due on the notes of Gilbert Voorhees. The charges of the bill, in denying the pretences, expressly state, that the complainant, Gilbert Voorhees, was not indebted to the testator at his death. The answer states that he was indebted to the testator at his death on three notes, to an amount exceeding eleven hundred dollars. This responsive answer must be taken as true, and raises the question whether they can be set off against his share.

The directions of the will are that one tenth of the estate of the testator shall be put at interest on bond and mortgage, and the interest paid to Gilbert during his life, and at his decease the share be paid to his children. The will says expressly, " I entail the legacy." It is clear that the notes of Gilbert cannot be set off against the principal of the trust fund directed to be invested, and entailed upon, or left in remainder to, his two sons. The whole tenth must be invested. Gilbert's sons will be entitled to the whole, without any

deduction for the debt due by their father. It does not appear, except by allegations in the answer not responsive to the bill, whether the amount due on these notes was included in the account before the Orphans Court. The defendant should, before he settled his account, have collected these notes, or if Gilbert was insolvent and they could not be collected, should not have included them in his account. If it did appear that they were included and accounted for, it does not appear, even by a naked allegation, that Gilbert is now insolvent. If he is solvent, it is the duty of the executor to collect these notes, and distribute the amount according to the will. Nor does it appear whether these notes are now collectible; the answer says they are unpaid, but for anything that appears, they may be outlawed, as the acknowledgment set up at the time of the inventory is considerably more than six years ago, and these notes, as against the interest due to Gilbert, are not merchants' accounts, that would prevent the running of the statute of limitations. The notes were due from Gilbert to the testator, on a transaction in the testator's life. The interest on his tenth is due to Gilbert, as money received by the defendant from the person to whom the tenth was loaned for Gilbert's use, a matter arising since testator's death. But if these notes are not barred, although at law they could not be offset against the interest due to Gilbert, yet a court of equity would allow them to be used in payment of the interest due to Gilbert in his life, and therefore, if the defendant thinks he can establish them as existing claims not barred, it may be referred to a master to inquire and report thereon.

The account rendered before the Orphans Court cannot be inquired into or corrected here, in this collateral way, whether it is a final account or not. It was at least the final settlement and allowance of an intermediate account, which is within the jurisdiction of that court, and on which their determination is final and conclusive, except upon appeal. Even fraud or mistake in the account cannot be inquired into collaterally, although fraud in procuring its allowance might,

in equity, be so inquired into. And the charging himself with notes before he had collected them is not fraud, nor is it the kind of mistake that will authorize setting aside an account.

The account was rendered before the death of the widow, and the sum of one thousand dollars invested for the widow, and the inventoried value of the furniture bequeathed to her for life, were rightly included, and must be presumed to be included, in it. The defendant is entitled to an allowance from the balance as stated in the account, for any deficiency of the amount of sales of that furniture below the inventory prices. He must account to Gilbert Voorhees for the interest on one tenth of the balance as stated in the Orphans Court account, from the allowance of that account; the interest of one tenth of the one thousand dollars, and of the inventory value of the furniture left to the widow, to be deducted during her life, and of one tenth of the loss on sale of furniture from her death, and the interest of the sum of four hundred and twenty-five dollars, paid by him to the complainants, from April 15th, 1858, the time of such payment. From this amount of interest, he will be entitled to credit for all sums paid by him to Gilbert Voorhees on that account.

Gilbert Voorhees is not entitled to receive any of the principal, under the provision in the will for paying part to him if he should become disabled and needy. He neither alleges nor proves that he is so.

The defendant must account for what he may have received since the death of the widow, from the rents or sale of the house and lot devised to her for life. From this he will be entitled to allowance for any payments or expenses lawfully made or incurred since the Orphans Court account. Of the balance of the proceeds of the house and lot, the complainants will be entitled to have one tenth invested as provided by the will.

The defendant must invest the principal so settled and adjusted, on mortgage on real estate, for the benefit of the

complainants, as directed by the will, and must report such investment to the court, designating by what mortgage their amount is secured.

There must be a reference to a master to report upon the principles above stated.