The problem on this appeal is whether executors may be required to apply their distributive shares and commissions in reduction of mortgage debts which they owe the estate.
August Kraeuter died in 1921, leaving a will by which he gave his estate to his wife for life, remainder to his children. "All indebtedness to me from such of my children to whom I have advanced money during my lifetime and as shown by my ledger accounts, shall be considered as part of my estate, and such advancements shall be deducted from the share of such child or children to whom said advancements were made." Testator appointed his wife executrix to serve until her death, and from the time of her decease appointed his sons August and Arthur executors.
The widow died and on January 13th, 1936, the sons qualified as succeeding executors. Two and a half years later, they presented their first intermediate account and suggested *Page 121 
distribution of $19,600. The orphans court ordered a distribution of $23,800, and allowed to each executor a commission of $750. The court further directed that the debts due the estate from any child of testator, with interest at five per cent., be deducted from, and included as part of, such child's share in the distribution, and that the executors' commissions be paid by applying the same against their indebtedness to the estate. The executors have appealed.
The decree of the orphans court calls for the distribution of $11,228 in cash, the application of $9,172, indebtedness from others than the appellants, and the application of $4,900 due from them, making up $25,300. When the decree is executed, there will remain due the estate from appellants $12,299 and from other legatees $596. If the executors were now to pay in full what they owe the estate — all long past due — an additional distribution of $13,000 could forthwith be made.
The decree operates on appellants' debts to the estate as follows:
August L. Kraeuter:
 Unsecured debt to testator with interest ........ $1,767
 Bond to testator, secured by second mortgage .... 3,000
 Interest thereon at 5%, 2 years, 10 months, 18
 days .......................................... 432
 ______
 $5,199
 Distributive share applied ...................... $1,700
 Commission applied .............................. 750
 ______ 2,450
 ______
 Balance remaining on bond and mortgage .......... $2,749
Arthur A. Kraeuter:
 Bond to testator secured by second mortgage ..... $12,000
 Distributive share applied ...................... $1,700
 Commission applied .............................. 750
 ______ 2,450
 ______
 Balance remaining on bond and mortgage .......... $9,550

"It is a principle founded in sound reason and justice, that a legatee indebted to the testator under whose will he is entitled to a legacy, shall accept his debt in payment of his *Page 122 
legacy, or his legacy may be applied in discharge of his debt. Vice-Chancellor Shadwell says the proper answer to be made to a legatee who asks for the payment of his legacy without first paying his debt, even in a case where the remedy at law for the collection of his debt is barred by the statute of limitations, is, `you ask for a portion of the assets of the testator, but you are yourself a debtor to the testator's estate, and his assets are diminished pro tanto by your default; it is against conscience that you should take anything out of the estate until you have made good what you owe to it.' Courtney v. Williams,3 Hare 539, 553." Denise's Executors v. Denise, 37 N.J. Eq. 163.
To the same effect are Snyder v. Warbasse, 11 N.J. Eq. 463;Voorhees v. Voorhees' Executor, 18 N.J. Eq. 223; Brokaw
v. Hudson's Executor, 27 N.J. Eq. 135, and First NationalBank v. Hurley, 122 N.J. Eq. 53. But appellants say the rule does not apply to their legacies, because they are solvent and their debts to the estate in most part are secured. I do not believe the distinction valid; no authorities for it are cited and I can find none. In Voorhees v. Voorhees' Executor,supra, there was no showing that the legatee was insolvent, yet his debt was set off against his legacy. While appellants insist on their solvency, they do not explain why they fail to pay their debts to the estate.
The debtor-legatees are not aided by the fact that they are executors. The debts are assets of the estate. R.S. 3:7-5. Wood
v. Tallman, 1 N.J. Law 177. It is the duty of an executor to collect all debts due the estate, as well from himself as others.Haines v. Haines' Ex'rs, 15 Atl. Rep. 839.
The situation in regard to the executors' commissions is somewhat different. Our reports contain no discussion of the payment of such commissions out of debts due by executors to their estate. But in the Union Bank Case, 37 N.J. Eq. 420;38 N.J. Eq. 265, the allowance to a receiver was set-off against his debt due the estate. "He cannot reasonably expect that the court will pay him, a trustee, his commissions, and leave unpaid his debt to the trust estate."
Appellants also point out that by force of our statute, R.S.2:65-2, where a bond and mortgage are given for the *Page 123 
same debt, the mortgage must first be foreclosed before action on the bond, and so the land is the primary fund for payment of the debt and the bondsman is personally liable for the deficiency only. Mann v. Bugbee, 113 N.J. Eq. 434. If August or Arthur Kraeuter had sold the mortgaged land, the rule just cited might perhaps have a bearing on the case; but I understand neither of them has done so. The only substantial effect of the statute — if there were proceedings to enforce appellants' bonds and mortgages — is that their lands described in the mortgages must be sold on execution before recourse is had to their other property. Nothing here inhibits the court from decreeing that a legacy to testator's debtor and the commission allowed him, should be paid out of the mortgage debt.
Appellants lastly argue that a mortgage debt is in a class by itself in regard to set-off. It was early held that no debt of the mortgagee could be set-off against the mortgage unless the parties had so agreed. White's Admr's v. Williams, 3 N.J. Eq. 376.
And this rule was observed until changed by statute in 1900, so that all just set-offs should be allowed against a mortgage "in the same manner and to the same extent as like set-offs are allowed in actions at law." P.L. 1900 p. 310; R.S.2:65-20. The statute then governing set-offs in an action at law required both demands to be liquidated — debts. R.S. 2:26-190.
It was accordingly held that unliquidated damages could not be set-off against the mortgage, in foreclosure. CommonwealthTitle, c., Co. v. New Jersey Lime Co., 86 N.J. Eq. 450;Corson v. Bailey, 98 N.J. Eq. 323. The law on the subject may have been further changed by the Practice act of 1912, containing the provision, "Subject to rules, the defendant may set-off or counter-claim any cause of action." R.S. 2:27-137. If the legislature, by the statute of 1900, meant to give a mortgagor as broad a field of counter-attack as a defendant has in an action at law, then I think an unliquidated obligation of the mortgagee could be availed of by the mortgagor, provided it could be conveniently made certain in the foreclosure suit. But I need not pass on that question. *Page 124 
The amount owed by the executors on the mortgages is, of course, a liquidated sum; and the amount of their distributive shares and commissions, were, by the decree itself, made certain. I see no valid objection to setting off one against the other.
But the strict rules of set-off are not here involved. The right to pay a legacy out of a debt due by the legatee is not technically a right of set-off. "It is rather called in the old cases the right of retainer. It is an equitable right of its own nature and not at all dependent on any statute. It is the plain moral, as well as legal, duty of the debtor to pay his debt to the estate. He had the value from the estate. He ought, in morals and law, to restore it. It needs no statute to affirm this duty. It is self-evident." Webb v. Fuller (Me.),27 Atl. Rep. 346. See, also, Holmes v. McPheeters (Ind.),49 N.E. Rep. 452. These principles apply equally to the debtors' commissions. The executors cannot properly demand payment while they leave unpaid their debts to the trust estate.
I observe from the account that the executors have collected only $16,268, and yet were allowed commissions of $1,500, or more than nine per cent. But no appeal is taken from the allowance; probably it was made by consent.
The decree will be affirmed. *Page 125